All right, our next case is United States v. Flechs, No. 22-5088. Counsel, you may proceed. Good morning, Your Honors. May it please the Court. Assistant Federal Public Defender Amy Flechs, you may proceed. Good morning, Your Honors. My name is Amy Flechs, and I'm the Assistant Federal Public Defender for United States v. Flechs. I'm here today to talk about a substantial step toward committing the crime of enticement. This statute criminalizes a very narrow range of activity. On one end of the spectrum, it doesn't require a defendant to attempt to actually engage in the unlawful sexual activity with a minor. But on the other end of the spectrum, it doesn't criminalize asking a minor for sex, sexting with a minor, or exposing a minor to pornographic material. It instead criminalizes only a defendant's actions in actually taking steps to persuade, to encourage, or to convince the minor to ascend to sex in a way that overbears the minor's will. So to prove a substantial step here, it wasn't enough for the government to prove that Mr. Flechs may have had an intent at some point in the future and then took any act in furtherance of that intent. Instead, they had to show that there was an act that, one, unequivocally marked the defendant's acts as criminal under the specific statute, and two, that it exceeded mere preparation. It must show that he actually would have committed the crime and convinced the minor to have sex with him if he hadn't been interrupted. So let's look at Mr. Flechs' conduct here. Well, they don't have to intend to commit the underlying sexual act. No, Your Honor. Not the underlying sexual act. We're only trying to know, did they take a substantial step towards showing that they intended to entice or to entice a minor? They have to take a... Not that they intended to commit the underlying sexual act. And that's an important distinction here when you're talking about the nature of the step itself. It is, Your Honor. They do not have to take a step towards actually engaging in the step in the sexual act, but they have to take a step towards actually convincing the minor to assent to sex. And I understand Your Honor's distinction, but they have to try to convince the minor to agree to sex. That is the underlying offense, and they have to take a substantial step towards doing so. Well, could we parse that even a little bit more? Did Mr. Flechs need to propose having sex to commit the crime of attempted incitement? Enticement, I'm sorry. Not incitement. Enticement. I think yes, Your Honor, because that is the necessary preliminary step to get anywhere close to committing the offense. I can see where you would make that argument under 2422, but we said in Faust that the statute criminalizes the sexual grooming of minors regardless of any intent to consummate the illegal sexual activity. So I'm not sure I understand how you get to a requirement that the government prove that Mr. Flechs proposed sexual activity. So a couple of things, Your Honor. Faust was not a grooming case. That was a case in which I didn't say it was, and I think the critical language that I just read to you is not about that. It says regardless of any intent to consummate the illegal sexual activity. I think that's what I'm asking you about. Right, Your Honor. How much does the government need to go? Does it have to be a proposal that the minor and the defendant engage in the activity, or is it something short of that? So I think it's helpful to look at what a completed offense looks like. A completed offense under the statute, we're not talking about the underlying sexual activities actually happening. It is that the minor has been convinced. The minor says, yes, I ascend to sexual activity with you. That's what a completed offense looks like. And so a substantial step towards that means that the defendant has to do something that unequivocally marks his acts as criminal, and that's more than mere preparation. And grooming can be that. Grooming can be that, and a substantial step can be grooming as well. And why isn't that exactly what happened here, when he not only had sexually explicit conversations extensively over the phone, talked about meeting him, and then eventually says, I'm going to meet up with you, and I'm going to bring you Dr. Pepper at the skate park, and that's what he does. Why isn't that just part and parcel of the entire grooming process, but also another step towards eventually, it doesn't have to be anything specific, eventually enticing the minor? So Isabella answers this question, and grooming can refer to a large range of activity. Sergeant Hanning testified that flattery, joking, and building a rapport are steps of grooming. Right, and all of that happened during those conversations. Correct, Your Honor, but surely those conversations without anything else would not be a substantial step toward violating the statute. But we have something else here. We have an actual meeting. Sure, what we have here is sexual conversations. We know from Isabella it says explicit sex talk is not enough, so really the question for this court is what do we do with these soda drop-off, the in-person meeting. Right, and several conversations about him wanting to meet with him. Yes, Your Honor. Trying to set that up. Yes, Your Honor. They weren't necessarily about bringing soda to the skate park, but were about meeting him, that next step. Correct, they were about meeting him, but he made very clear that the purpose of the meeting was not for sex. But, of course, the jury did not have to believe, first of all, that this was just an innocuous, oh, let me bring you a Dr. Pepper at the skate park while I have my daughter in the back seat. They didn't have to believe that. Sure, Your Honor. They didn't. Sure, but that goes to the intent element, and it's really important that we not mix the two. So even if Your Honor believes that that is sufficient evidence of intent, what we're asking here is, in evaluating his conduct, were his actual actions close enough to violating the statute? Were they a substantial step? Right, exactly, Your Honor. And here... And was it something separate than the explicit sexual conversation they'd been having? Right, and so really the question is... Why wasn't it something extra to actually meet in person to say, I'm going to bring you a Dr. Pepper at the skate park to this presumed 14-year-old boy. Why wasn't that enough? For two reasons, Your Honor, and I think the stronger argument there is that in terms of a substantial step, it cannot be mere preparation, and it's really difficult to imagine how someone could convince a minor to have sex with them, to actually convince them to complete the Well, now we're back to what standard is, and there was no objection to the jury instruction on substantial step, was there? No, Your Honor, we have no problem with the jury instruction. All right, well, here's how it defines entice. Entice means to attract artfully or adroitly or by arousing hope or desire, or to lure, of course, means to compel to an act or choice. So you're not challenging the definition of entice. No, Your Honor. What we're saying is that bringing someone a soda, while it may have been a step, was not a substantial step. Well, that's a good jury argument, but we're here on substantial evidence, and you've got a standard of review to overcome, and I guess my question is, why couldn't a reasonable jury conclude that when Mr. Flex met with the minor, quote-unquote minor, he had more in mind than just dropping off a Dr. Pepper? Because, again, what he has in mind goes to entice. We're looking at his actions, and Well, isn't it pretty significant that after four days of this back and forth, very graphic language, which I think no one's disputing, then we have a meeting? That seems, you can argue, you know, one's mere preparation is another substantial step, but why would it be irrational for a jury to consider that a substantial step? Because the preliminary step that must go before convincing this minor is actually discussing having sex together. And the jury couldn't rationally infer that from these conversations? I don't think so, Your Honor, but even if they could, of course we have instructional claims here, and the Rule 605 violation was pretty clear here. The government's only argument is that under Rule 605, it's a direct quotation from Isabella, so it's a neutral legal principle. But, of course, we know that the definition of grooming is not, and cannot be, a neutral legal principle. It's a factual theory that explains why certain defendants or sex offenders generally, not that there's an underlying offense here with Mr. Fleiss, but Well, it seems like you've abandoned your first argument. We're now at 605. I just want to make sure I have time to discuss both, Your Honor. Well, no, that's fine. I'm not abandoning it, to be clear. Well, no, but you were answering the question about the first issue with Rule 605. So I just want to make sure that, you know, are these what you're arguing. But it's your argument. You decide what you'd like us to hear at this point. Sure, Your Honor. It's just that if Your Honor thinks it was a substantial step, then I would just like to move on. I didn't say what I, I haven't decided this case. I want to hear the arguments before I decide this case. You understand that. Of course, Your Honor. All right. Let's go ahead. Sue, just on to the 605 argument. Sue, we know that it has to be a statement of fact. The issue of what grooming is, how it works, why people engage in it, all of that is a factual theory. And we know that because expert testimony is sanctioned often in this court on that very subject. The fact that it's expert testimony tells us that it can't possibly be a neutral principle of law. And, of course, jury instructions are for a judge to give the jury a guide of what the legal principles that are relevant in that case are. If we agree with you that the 605 instruction was error, could you address harmless error? Yes, Your Honor. And my first point would be that the government does not contest that the harmless beyond a reasonable doubt standard applies here. The court doesn't have to resolve that because we satisfy either standard. But, of course, it would be helpful to— Well, it's an interesting question. Errors on violations of rules of evidence are typically non-constitutional errors. But we don't have to spend more time on that if you don't think we do. I think we satisfy either standard. The government cannot— Well, why can't the government meet the harmless error under either standard? Because even if the evidence weren't insufficient, it was certainly very weak. This was not a case where the proof against Mr. Flex was overwhelming because he never directly asked the minor for sex. And Isabella tells us that asking isn't even enough. And if that's the case, then the jury could have easily found that he didn't take a substantial step and that he didn't have the intent here. And what the instruction did was it put a stamp on the government's core theory. Because they didn't have a smoking gun text, because they couldn't say, look what he said, he propositioned the minor and then he encouraged him to go through with the sexual act. Because there's nothing like that, the government's whole case revolved around its theory of grooming. And how was—let's back up to why the instruction was error to begin with. It was error because it is a factual statement. And let's talk about that. What part of it is the factual statement? What took it away from the jury? So saying grooming refers to deliberate actions taken by a defendant. The ultimate goal is— Deliberate actions, which the jury would have to decide, first of all, if they're deliberate, intentional. They have to decide that, right? They have to decide, were these deliberate? The judge didn't tell them they are deliberate. The judge told them what grooming means? Right. And that is— And they're being asked to find, was this grooming? Was this a deliberate action that did something? They are. They are being asked to determine whether he violated the statutes. And this is a definition of grooming that an expert would give. And that's fine for expert testimony. But, of course, it's not fine for jury instruction because it's not just a thumb but a very heavy fist that the court puts on the scale in favor of the government. And stamping their theory with approval, saying it's correct is a matter of law. Well, was it consistent with Sergeant Hanning's testimony? I understand he didn't testify as an expert, but was it consistent with his testimony? I see I'm almost out of time, Your Honor, but to answer your question, they were slightly different. It was consistent, but even if the court had copied and pasted the exact thing that Sergeant Hanning said about grooming into a jury instruction, that would have been prejudicial because it would have bolstered his credibility and it would have resolved an issue that the jury should have been left to find. So your argument is that it's a factual issue, not a legal—it wasn't an instructional legal standard. Exactly, Your Honor. Thank you, Your Honors. Thank you. Did Bob have any— Oh, Bob—I'm sorry, Judge Bacharach. Did you have anything else? Oh, no. Thank you, Judge. Sorry about that. I know you're there. May it please the court, Thomas Duncombe for the United States. When Mr. Flex arranged and then showed up to the meeting at the skate park, a rational jury, for at least three reasons, could have viewed that action as a substantial step. First were the persistent messages that Mr. Flex sent leading up to the meeting at the skate park. Second were the actions at the skate park. The third were Sergeant Hanning's testimony that Mr. Flex's actions were consistent with those of a predator seeking to entice him. First— So on the third of those points, so is the subject matter of grooming, getting back to Ms. Senia's argument, is that factual or is it legal? Whether it's factual— It's a group. It's a group. Okay. Yes, Your Honor. Okay, so not to cause examination, but it doesn't sound like much of an answer. It's usually binary. It's either factual or legal. And if I can sort of press you a little bit, judges typically don't instruct juries on factual matters. So if it was appropriate, as you say, for the judge to instruct the jury, I assume that means that you think that it is legal. Otherwise, why would a judge be instructing a jury on facts? That's obviously improper under Rule 605, right? So there's a couple of parts to your question there. And if you don't mind, I'll take the latter part first, which is just because it may have helped the jury to analyze the facts or just because it may have been adjacent to the facts does not mean it's a Rule 605 error. Okay. And to the first part of your question, which I take as the more important part of your question, is why was it okay for the judge to give this instruction if it was not purely legal? And I would say if pressed, I would say it was certainly more legal than factual. But judges often give instructions on helping the jury on how to analyze the facts. For example, if there's a conspiracy. I'm sorry to cut you off, but don't forget what you were going to say. But just to put me on the question, what's really bizarre here is you typically, and I've never seen this, a witness is certifying, is testifying on X, and the judge says, Hold on a minute. After you're finished, I just want to testify, and I want to tell you, jury, X as well. So she is literally telling the judge and the jury, and she reminds the jury later, you're not obligated to follow what I say when I make these comments, but you are obligated to follow what I say in my instructions. And I have told you not once, but twice, exactly or at least consistent with what Sergeant Hanning has told you as well. And it's either, that's my sort of question, is it either legal or factual? You know, can she win? Tells you, I mean, if it's factual, she shouldn't have been instructing the jury about it. And if it's legal, Sergeant Hanning should have been testifying about it. So, Your Honor, once again, there's a lot to unpack there, but let me start with some examples of jury instructions that courts give routinely that are non-controversial and that go to, this is to assist you jurors as you are analyzing the facts. When there's a drug conspiracy case, and when there is a cooperator who is him or herself a drug addict, and who has him or herself entered into a cooperation agreement with the government, the jury, excuse me, the judge will often instruct the jury, you should view a drug addict's testimony with skepticism. That is not a legal principle necessarily, and it may not be applicable to every case. Just as in Isabella, this court was clear to say, some cases it finds grooming is a substantial step, some cases our sister circuits have found that grooming was not a substantial step.  And in some cases, the jury may be looking at a cooperating witness and saying, that was one of the more lucid and emotionally stable and intelligible witnesses I heard the whole trial. I had no idea that maybe I should view that testimony with skepticism. Similarly, in a 924C case, where there's a gun found in semi-close proximity to drugs, the court may give the jury an instruction, these are some factors you may wish to take into account when performing your task of determining, as a factual matter, whether the gun was possessed in furtherance of drug trafficking. But that says, you may be faced with this testimony, and this testimony is legally correct. You may have testimony that this grooming is a substantial step to entice a minor to engage in sexual relations with an adult, and that isn't that grooming, that is correct. Would that be improper? If the judge had said that grooming always constitutes a substantial step, or that grooming, or that in fact Mr. Flex did engage in grooming, then it would have been improper. Neither of those things Judge Egan did here. Judge Egan was clear, in fact, she said multiple times before the trial even kicked off, that no witness was going to be allowed to testify that any actions here were grooming, because, quote, I'm not allowing anybody to say that. That's at Supplemental Volume 2 at page 13. And she makes clear to both counsel, before opening statements, whether the defendant took a substantial step to coerce or entice is an ultimate factual question for the jury. No witness will be allowed to state a conclusion on that ultimate fact. And that goes back a little bit to our invited error argument, but it's applicable here too, that the defense counsel, the government, the court, all of them were in lockstep on the fact that this instruction was appropriate, that this instruction was something that they wanted to be given to clarify the principles appropriate to this case, applicable to this case. And I will say, I'll quibble just a little bit with the way the appellant phrases the facts of what Judge Egan did. Judge Egan didn't interrupt the sergeant's testimony to say this is the definition of grooming. Judge Egan waited until he was finished with an answer, and then asked counsel, is now a good time for me to give that instruction that we talked about at the beginning of the case twice? And that actually was the fourth time that the defense counsel had a chance to see that instruction, because it was printed verbatim in the government's proposed jury instructions, which also cited this case in Isabella. If I may just talk about the sufficiency, and I don't want to preclude any further questions on this point. Well, then let me jump in. I just have one thing. You said a few minutes ago that the instruction was more legal than factual, but I think your brief goes further and says it's based on a holding. A holding, it strikes me, is legal. And I guess I just need to say, did any of our cases, including Isabella, purport to give a legal definition of the term grooming? No. I think that it is a legal principle. It's not necessarily a legal definition, like you'd find it in Black's Law Dictionary. The court often defines it as… You can't find it in Black's Law Dictionary, can you? Grooming, I'm not sure. I haven't looked. But the point is that the district courts often give instructions that are based on language that this court or that the Supreme Court has held. This is what Pinkerton liability means. This is what a substantial step means. This is what interdependence means. There's all sorts of instructions that the district court gives about interdependence, which the word is nowhere in any of the conspiracy statutes. It's a judge-interpreted element, and this court has formed its definition of what interdependence is. And so I apologize if it seems like I'm trying to parse words here. We do agree with what we said in our brief, that this was a neutral principle. If we get to harmless error, what's the standard? If you get to harmless error, the standard is non-constitutional harmless error, and I want to apologize for not making that clear in our briefs. Because in reading over our brief and in reading over Andisola, it's clear that we made the same mistake that the parties in Andisola made, which is not making that clear and simply citing Nicol. For the reasons stated in Andisola footnote 6, where it cites a Ninth Circuit case and a Seventh Circuit case that talk about the fact that a pure rule of evidence violation, like a Rule 605 violation, usually doesn't rise to the level of a constitutional violation. This would be non-constitutional harmless error, if any. I don't think we decided in Andisola. The problem we had in Andisola was that Nicol had assumed essentially it was constitutional error, and so we talked about it as, there's other possibilities here, and the parties hadn't briefed it, but we didn't decide it. That's accurate, Your Honor. And in Nicol, of course, it was not necessary to go into it because the court found that under any standard, or the court kind of did a dual analysis and went back and forth a little bit. And then in Andisola, the court found under any standard, this was harmless. The same would be true here, where the court did not endorse Sergeant Haining's definition, didn't say, I want to let you know that what Sergeant Haining just told you about flattery, about building a rapport, is correct. The court gave the definition from Isabella. And the court also didn't say you should believe that this was grooming. The court didn't say you should believe that grooming is a substantial step. And finally, when the government actually misstated the standard somewhat in her closing argument, saying the court told you that grooming is a substantial step, Mr. Lynn, the defense counsel, was on the ball. He knew this instruction like the back of his hand, and immediately the first thing he did in the closing argument was he stood up and said, that's not what the judge said. And then the judge told the jury, disregard the arguments. You've heard the evidence. You rely on the evidence, right? So why should we be pretty darn concerned when you just conceded that the prosecutor misstated legally what Judge Egan had told the jury? That was the whole ballgame, whether or not the grooming was or could be a substantial step. And when the prosecutor said in closing argument that it is a substantial step, why is the fact that the defense counsel said something different, why does that cure the error, the misstatement? So first, I disagree respectfully that this was the whole ballgame, whether grooming was a substantial step, because as I said in my opening here, the government's theory at trial and here today is that there were several actions that could have been interpreted as a substantial step. Most notably, Mr. Fleck's actions of going to the skate park and meeting the child in person. But second of all, and more importantly, your core question, Judge, I think, and I don't want to interrupt, but to the core of your question, why wasn't that a problem or a legal error? So first of all, the appellant has not raised that as a legal error that they're asking this court to review, the prosecutor's closing remarks. But second of all, even if they did, that would fail. It would be clearly not something that affected the defendant's substantial rights because not only did the defense counsel come in and cite chapter and verse and say, if you look at page 30 of the jury instructions, you'll see that's not right. Grooming can be a substantial step, but also the jury heard it twice from Judge Egan, the correct one. Okay. Let me ask you about your point, if I might, about harmlessness based on the overwhelming evidence of guilt and the senior's argument about insufficient evidence. We did say in Thomas, did we not, that substantial step requires more than preparation. So would you concede that you had to prove beyond a reasonable doubt something more than preparation to entice Mike to have sex? Yes, we absolutely agree with that and the evidence for that happens. All right. All right. And let's talk about that evidence that you identified at the start. So I think you started by talking about those, all of those messages, right? Yes, sir. Text messages? Yes, sir. And in the text messages, every time Mike has to entice Mr. Pletz to say something incriminating, like, wouldn't you like to teach me about sex? The answer, 100% of the time, is no. Now, therefore, obviously proper, inappropriate, even disgusting reasons. Like, at the end, he never, he not only never says yes, or maybe, the answer 100% of the time is no. And so I'll just ask you a compound question because I know we're out of time. And then the second part of your argument in your briefing today is, well, he goes and visits him with the same part. Well, that's right. But he's doing it with the window down, gives him a Dr. Pepper, says he's got to, you know, pick up his daughter, all of which is true. It's unlike any of the cases that you provide on where the whole idea of setting up the rendezvous at the bus station, et cetera, is to engage in sex. He clearly is not going to have sex with him with the window down, handing this 19-year-old cop two Dr. Peppers in a bag. I think it is absolutely reasonable, even compelling, to infer that he wanted to figure out if Mike was a real person. And that's why he wanted to, he didn't care if he was going to have the soda, but he wanted to know if Mike was a real person. And he found out when he sees this 19-year-old kid that doesn't look anything like the picture that he had identified Mike as. All of which is compelling of preparation, but I don't see, frankly, any evidence of anything beyond preparation to entice Mike to have sex with him. Why am I wrong? Well, Judge, I see I'm out of time, but if the Court will permit me to answer. I think that would be a good idea. So, once again, Judge, there's a lot to unpack here, but I'll start with the actions at the skate park, which you referenced. First of all, the jury did not have to credit his self-serving explanation that he had to later take his daughter to a gymnastics competition. The only evidence in the record was his self-serving statement to that effect. Second of all, the agent asked for one Dr. Pepper, and Mr. Flex brought two. That is evidence that the jury could have hung its hat on that, actually, Mr. Flex, if he hadn't seen the undercover officer, and if his purpose hadn't been frustrated, he was planning to stick around. And, as Sergeant Haining testified, the statements that we've got to leave in public place, just like the statements early on, persisting in asking for another picture that's not just a profile picture, are consistent with a predator who is trying to make sure that he is not being subject to a sting operation. It turned out Mr. Flex guessed wrong here. But there's also something else compelling, and I take what you said about that every time the officer proposed something sexual, Mr. Flex said no. That's not true, and the appellant would like to paint the facts that way, and there are certainly times where Mr. Flex says, that's illegal, LOL, or, you know, you should find someone your own age, LOL. But there are times where it is much more intentionally ambiguous, and where the jury could interpret it as Mr. Flex trying to give the purported child an opening. Such as, when he says, I'm looking to relieve that pressure from all the, I apologize, but all the precum in my pants, and I want to find a nice tight hole to relieve that pressure. The purported 14-year-old responds with, too bad you don't know anybody. Mr. Flex responds with, yeah, no kidding, hey, when's your birthday? And there are parts of the conversation where Mr. Flex repeatedly, not only references pornographic episodes with children, and reminds the 14-year-old that he's okay with that. That I didn't report them, nothing seemed forced, but also asks the 14-year-old about how big is your penis? I'll bet you have a big penis. Sort of, you know, engaging in these behaviors to put the focus back on the 14-year-old. And then the persistent messages leading up to the skate park. There was a period there where Sergeant Haney was not trying to lead Mr. Flex on anymore. He stopped sending messages for about three days. And Mr. Flex, during a time when he believed that this foster child's only parent figure was out of the house, said at 4.25 a.m., hey, I'm passing by your area, lol. And then later that same day, hey, you live right on the route that I take every day, lol. And then later that same day, hey, are you around? And then persistently, hey, would you like to hang out? Hey, would you like to go to the skate park? So the jury, in the sufficiency of the evidence case, could have inferred those actions as not merely preparation, but those were actions that were him taking his substantial step, taking his shot, as the Ninth Circuit said in Getzky, to, if this hadn't been an undercover operation, to succeed in enticing the child once he got to the skate park. I want to clarify, this is about the daughter. He said he was going to pick up his daughter. She wasn't in the car. There's no evidence she was in the car. There's no evidence in the record that she was in the car. And I think that if she had been in the car, it's likely that would have come into the record. I'm not sure I got that. But there is no evidence in the record that she was in the car. So it's his story, which is, I was bringing you Dr. Pepper at the skate park and wasn't planning to do anything else. He brings two Dr. Peppers, and he says, I was going to pick up my daughter. Right. And the first words out of his mouth to the officer were, I wasn't trying to fuck him. And the jury heard that as well in the evidence. So there was a lot for the jury to hang their hat on in terms of both his intent and substantial step. If there are no other questions, the government would ask the court to affirm. Thank you, counsel. Ms. Senna, in fairness, we did let him go over quite a bit. Did you want to say just a little bit by rebuttal? Sure. Thank you. Maybe put another minute up for her. Just briefly, Your Honor, on the sufficiency claim, it is really important that we keep doctrinally separate all of the evidence that goes to intent and the evidence that goes towards substantial step. And really, the only question for substantial step is whether the soda drop off was enough or whether it was merely preparatory. And it was preparatory because it didn't unequivocally mark his acts as criminal. As Judge Bagarach mentioned, it is equally consistent with him trying to make sure that this is even a real person. And additionally, it's… Why was it preparatory if we believe the government's point, which is it only became a drop off. He had his two cups. It only became a drop off when he realized that the person he was there to meet wasn't the person he'd seen the picture of. And couldn't the jury have believed that? Well, just to correct the record on that, it was after Mr. Flex was already arrested, which came into evidence, the officer said, do you really have to drop off your daughter gymnastics or was that just a ploy? And he said, no, I really do. I need to call my wife. That's not what I'm asking. I'm asking why could the jury not have believed that had he not ended up meeting an undercover officer instead of the 14-year-old boy in the picture that he'd seen, that he fully intended to do more than simply drop off one of the two Dr. Peppers? Sure. Because even if you think that that goes to his intent, what he was trying to do in that meeting, it's still… Why is it a substantial step if that's what he was doing? Because there were still other essential steps that remained outstanding. He hadn't even broached the idea of the two of them having sex together. Sure, there was explicit sex talk, but there was never any conversation about them having sex. And it makes sense logically that that has to be a step that precedes a substantial step. And because that hadn't been completed here, then we know that it's not enough to exceed mere preparation. And just very quickly on the Rule 605 issue, I think we know that it's factual because experts can test about it, testify about it. We know that the fact that it's lifted from a case doesn't mean that it's appropriate for a jury instruction. The model instructions, the pattern instructions in the Tenth Circuit say that in the introductory note. And there was also a recent case in this court, Sago, where the defendant tried to do that and it was actually a legal principle. And the court said, no, it's not appropriate for you to lift language directly from a case and then paste it into a jury instruction.  Yes, United States v. Sago, that's 74 F. 4th, 1152. And as to harm, we know that it can't possibly be harmless because it was the judicial imprimatur of the government's entire case, which was all about grooming. If there's no grooming testimony, then the soda drop-off is meaningless because that's only indicative from a jury's perspective of committing the offense if we have all of the evidence before that showing that it's grooming. Thank you, Your Honors. Thank you, counsel. Thanks to both of you for giving us a little extra argument this morning. The case will be submitted and counsel are excused.